IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:   3:08cr22/LAC/EMT
                                                    3:13cv304/LAC/EMT

JAMES FREEMAN

---

## REPORT AND RECOMMENDATION

This matter came before the court on Defendant James Freeman's "Motion by a Person in Federal Custody to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255" and memorandum in support thereof (ECF Nos. 972, 973).   The Government responded in opposition (ECF No. 1001), and Defendant filed a reply, as well as notices of supplemental authority (ECF Nos. 1048, 1186, 1187).   The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.    *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

## BACKGROUND

Defendant and thirteen others were charged in a forty-count superseding indictment with various charges related to the international distribution of child pornography via the internet (ECF No. 78 (Defendant Freeman charged in Counts 1, 2, 6, 18, 29, 40)).   After a six-day jury trial, Defendant was convicted of engaging in a child exploitation enterprise ("CEE"), in violation of 18 U.S.C. § 2252A(g) (Count 1); conspiring to advertise, transport/ship, receive, and possess child pornography, and to obstruct an official proceeding, in violation of 18 U.S.C. §§ 371, 1512(k), 2251(e), and 2252A(b) (Count 2); receiving and attempting to receive child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and 2 (Count 29); obstructing justice, in violation of 18 U.S.C. § 1512(c)(2) (Count 40); advertising the exchange of child pornography, in violation of 18 U.S.C. § 2251(d)(1) and (2) (Count 6); and knowingly transporting and attempting to transport and ship child pornography, in violation of 18 U.S.C. § 2252A(a)(1) and 2 (Count 18) (*see* ECF Nos. 78, 472, 661).   Defendant was sentenced to a term of life imprisonment as to Count 1, 600 months as to Counts 2 and 6, 480 months as to Counts 18 and 29, and 240 months as to Count 40, with each count to run concurrently with the others (ECF No. 661 at 3).   The judgment was later amended to include the imposition of restitution in the amount of $3,263,758 (ECF No. 766).

Defendant appealed, and the Eleventh Circuit vacated Defendant's convictions for conspiracy and statutory obstruction of justice in Counts 2 and 40, as well as the restitution award.   United States v. McGarity, 669 F.3d 1218, 1229 (11th Cir. 2012).   The opinion stated no fewer than five times that the evidence against the Defendant and his co-Defendants, which included their own confessions,[1] was nothing short of "overwhelming."   *Id.* at 1242, 1243, 1246, 1263. The Supreme Court denied certiorari (ECF No. 931), and on April 10, 2013, the district court entered a second amended judgment sentencing Defendant to a term of life imprisonment on Count 1, 600 months on Count 6, and 480 months as to Counts 18 and 29 (ECF No. 964).   Defendant timely filed the instant motion to vacate, raising 78 claims for relief (ECF Nos. 972, 973).

As noted by the Government, the facts of this case are set forth in the superseding indictment, the transcripts of the trial and sentencing proceedings, the Pre-Sentence Investigation Report ("PSR"), the second amended judgment and statement of reasons, and the Eleventh Circuit's opinion on appeal (ECF Nos. 78, 720–725, 835, 903, 964–965, 1194).   Therefore, the undersigned will provide an abbreviated recitation of the facts here, and relay additional specific facts only as needed for resolution of claims raised in the instant motion.

---

[1] Defendant denies in his memorandum that actually confessed and appears to profess his innocence (ECF No. 973 at 13).

As set forth in the Eleventh Circuit's opinion, in 2005 an informant notified Constable Brenden Power of the Queensland, Australia Police Service of the existence of a computer ring of child pornography users that operated through internet newsgroups.  The informant revealed which newsgroups the ring was using, the ring's encryption method, and the informant's nickname within the ring, which enabled Constable Power to infiltrate the ring.  Constable Power began monitoring the ring and learned of the sophisticated nature of the ring, including controls on memberships and complicated methods of communicating and posting using encryption.  Members uploaded scrambled and encrypted binary files in one newsgroup, and then would place a message in another newsgroup advising that the upload was there with instructions.  Other members could then download the encrypted message, decrypt and read it, and follow the instructions contained therein to locate and download the files containing child pornography.  The group masked headings when posting files and messages and frequently changed nicknames as a further means of avoiding detection.

After realizing that the ring was operating internationally, Constable Power traveled to the United States in 2006 where he continued his investigation in conjunction with the FBI's Innocent Images Unit.   The joint investigation continued for another year, during which time law enforcement was able to identify 22 members of the child pornography ring, 14 of whom were people of special interest.

Between August 31, 2006 and December 15, 2007, law enforcement detected the upload of over 400,000 images and more than 1,000 videos by ring members.   Not all of the images and videos portrayed child pornography, but many of them depicted the sexual abuse of minors in graphic and grotesque detail.

On February 28, 2008, law enforcement agents simultaneously executed search warrants at the residents of the Defendants in this case.   All Defendants except for one confessed his involvement with child pornography and with the child pornography ring in question.   Encryption keys of the type provided to Constable Power to access the pertinent newsgroup postings were found in the possession of all but one of the Defendants, including Defendant Freeman, and after being taken into custody and housed together six of the Defendants, including Defendant Freeman, admitted to the others his membership in the child pornography ring. United States v. McGarity, 669 F.3d 1218, 1229–31 (11th Cir. 2012).

## LEGAL ANALYSIS

General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise

subject to collateral attack.   *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.   Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).   Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.   Nyhuis, 211 F.3d at 1343 (quotation omitted).   Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.   Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).   An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."   Lynn, 365 F.3d at 1232 n.14 (quoting Mills, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."   Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."   Lynn, 365 F.3d at 1235.   A meritorious claim of ineffective assistance of counsel can constitute cause.   *See* Nyhuis, 211 F.3d at 1344.

In this case, the Government argues that nearly all of Defendant's substantive claims are procedurally barred, or otherwise not properly before the court on collateral review.   Taken as stand-alone claims, the Government's assertions are

largely well-taken.    However, Defendant also raises claims of ineffective assistance of both trial and appellate counsel in his motion, which may defeat the procedural bar.   In the interest of brevity, the court will not reiterate the standard for, or engage in a discussion of, the procedural bar on each of Defendant's substantive claims, recognizing that absent the ineffective assistance of counsel claim, they are likely not cognizable on collateral review.

    1.  <u>Failure to Preserve/Produce Evidence</u>

In Grounds 1, 2, 10 and 55 (as well as Ground 9, discussed separately, below), Defendant asserts the Government failed to preserve/provide the defense with potentially exculpatory evidence, or access to the evidence that it had seized.   In addition to asserting that such claims are procedurally barred, the Government argues that Defendant's assertions are factually without merit.

The Supreme Court held in <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment."   In order to obtain relief on a <u>Brady</u> claim, Defendant must establish that: (1) the Government possessed evidence favorable to him; (2) he did not possess the evidence and could not have obtained it with reasonable diligence; (3) the Government suppressed favorable evidence; and (4) the evidence was material.

Ponticelli v. Secretary, Florida Department of Corrections, 690 F.3d 1271, 1290
(11th Cir. 2012).

The Government notes that Constable Power downloaded all material relevant
to the investigation and maintains that the Government neither destroyed nor failed
to download any exculpatory evidence (ECF No. 720 at 52–146; ECF No. 721 at
180–96). The attachments to the Government's brief support its assertion that this
information was provided directly to the defense or that the defense had the
opportunity to review it (ECF No. 1001, Exh. B).[2] The Government also notes that
although the court denied Defendant's attempt to compel discovery for "file
listings," it provided same to the defense to ensure that it met its discovery
obligations (ECF Nos. 361, 376, 433; ECF No. 1001, Exh. B; ECF No. 973 at 55).

In his reply, Defendant cites the absence of "child modeling images" in the
discovery he was provided as proof that the Government did not provide
"exculpatory" evidence. Defendant argues that several of the Government's trial

---

[2] Defendant makes a pointed observation that the Government's inclusion as an exhibit to
its response, namely, a request to have co-Defendant McGarity transported to the office of the
United States Attorney, does not prove that it did the same for Freeman (*see* ECF No. 1001 at 10,
Exh. C; ECF No. 1048 at 7). He asserts that he was unable to attend any meeting to assist his
attorney in reviewing the evidence because the Government did not issue a request for his
transport. Defendant does not claim, however, that either he or his attorney requested and were
denied such a subpoena, and he admits that he and the other co-Defendants were provided a laptop
computer to jointly review discovery (ECF No. 972 at 11–12).

witnesses testified that over half the images "traded" by the alleged conspirators were legal child modeling images.   He fails to explain how the presence of photos that were not actual child pornography somehow excuses his liability for those that were.   Furthermore, the jury was made aware of their existence through testimony presented at trial.

Defendant asserts in Ground 9 that the Government failed to provide several subpoenas it had allegedly cited in the search warrant affidavit but had not included in the discovery.   He contends that the subpoenas contain exculpatory evidence because they "in all likelihood show many instances in which a posting alleged to be by Freeman provided locations and details of material uploads but some other individual not related to the case had actually uploaded the material" (*see* ECF No. 972 at 10).   He asserts that this theory was in direct conflict with the Government's theory of guilt, that is, that only the transporter would know the location and details, so no future evidence was required beyond the posting itself.   Attached to Defendant's reply is what purports to be a copy of a subpoena showing different binary image postings allegedly advertised by him, but which, he claims, were traced back to individuals who were not members of the Achilles group (ECF No. 1048, Exh. C). Defendant's assertion that this information was not provided is unproven,

as is his underlying assertion that it would have been exculpatory such that any alleged omission rose to the level of a <u>Brady</u> violation.

In sum, to the extent these claims are construed as alleging a violation of <u>Brady</u>, they fail.   Defendant has not shown that the Government intentionally suppressed any evidence material to the question of guilt or punishment.

### 2. Procurement of the Indictment

In Grounds 3 and 4, Defendant complains about irregularity in the indictment process.   First he claims that the Government unfairly delayed his indictment, resulting in the loss of relevant evidence.   He also asserts that the Government improperly engaged in forum shopping by presenting its case in the Northern District of Florida after a grand jury in Maryland did not return the charges sought by the Government.

To the extent Defendant asserts that prosecution was improper in this district, he is mistaken.   As noted by the Government in its response, this was a global operation.   Dozens of conspirators were arrested on February 29, 2008, around the world.   Clearly, the case was much more far reaching than just this one Defendant, and the Government had to choose the best time and location for prosecuting its case. Defendant's speculation about the reason for the delay ("the government delayed as long as possible in the hopes that some group member would commit some heinous

crime against a child and post it to the group") (ECF No. 1048 at 10–11) is nothing more than rank speculation and does not establish that his rights were intentionally and purposefully violated by a delay.

With respect to venue, in a case involving a conspiracy, venue is proper "in any district where an overt act was committed in furtherance of the conspiracy." United States v. Smith, 918 F.2d 1551, 1557 (11th Cir. 1990); United States v. Matthews, 168 F.3d 1234, 1246 (11th Cir. 1999). Venue exists in any district in which an "offense was begun, continued or completed," and in instances where an offense involves transportation in interstate or foreign commerce it may be "prosecuted in any district from, through, or into which such commerce moves." 18 U.S.C. § 3237(a); *see also* United States v. Bagnell, 679 F.2d 826 (11th Cir. 1982) (Government may prosecute pornography dealers in any district into which the material is sent); United States v. Kapordelis, 569 F.3d 1291 (11th Cir. 2009) (citing United States v. Rodriguez-Moreno, 526 U.S. 275, 279–81 (1999)). Defendant has not shown a violation of his constitutional rights in this regard.

3. Procurement/Execution of Arrest and Search Warrants

Defendant asserts in Grounds 5, 6, and 7 that the Government improperly obtained and/or executed both arrest and search warrants in this case. In Ground 5, Defendant asserts that the Government used excessive force against him during his

arrest.  To the extent that Defendant believes he has any factual basis for such a claim, he could have brought a separate civil rights action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). Such an action is independent of the question of his guilt or innocence of the charges in this case.

In Ground 6, Defendant claims that the Government's search warrant violated the Fourth Amendment and contained false and misleading statements.  He complains that the warrant included "boilerplate" language that was used in at least 13 other affidavits around the country, and that although the affiant attested that the warrant affidavit was based on his own personal knowledge and experience, the affiant had not participated in any aspect of the investigation and had little knowledge of the case until tasked with obtaining a search warrant.  Defendant fails to acknowledge that this fact is included in the affidavit itself.  Special Agent Robert Cochran expressly states in the affidavit that the statements therein are "based in part on information provided by other Special Agents of the FBI, [and] other law enforcement officers," in addition to his own investigation, experience, training and background as a Special Agent (*see* Case No. 3:08mj21/EMT (ECF No. 2 at 2)).

Defendant mischaracterizes many of the allegedly false and misleading statements he identifies in the affidavit (*see* ECF No. 972 at 8).  For instance, he

Case Nos: 3:08cr22/LAC/EMT; 3:13cv304/LAC/EMT

alleges that Paragraph 16 does not describe "all persons who collect any images of children [as] 'sexually deviant'"; the term "enterprise" used in Paragraphs 17 and 18 did not originate from the Australian former member of the group; and the affidavit does not state either that the 403,442 images distributed or received by the enterprise were all child pornography, or that the production and trade of child pornography was the sole purpose of the enterprise.   Defendant also quarrels with the legal conclusion contained in the affidavit that certain video segments described therein constituted child pornography.   Such a determination was unnecessary at that point. The description of the contents of the videos as set forth in the affidavit merely served to add to the strength of the affiant's contention that there was probable cause to support a search.   In one respect, Defendant is correct:   his prior conviction was for "enticement of a child under sixteen," rather than "lewd acts upon a minor" (*see* ECF No. 20, reflecting dismissal of "statutory rape and child molestation" charges against Defendant Freeman).   However, the undersigned finds that the affidavit taken as a whole was not false and misleading.   Defendant has not shown that the affidavit contains either "deliberate falsehood or reckless disregard for the truth," Franks v. Delaware, 438 U.S. 154, 171 (1978), and his suggestion that it was constitutionally infirm is not well-founded.

Case Nos: 3:08cr22/LAC/EMT; 3:13cv304/LAC/EMT

In Ground 7, Defendant contends that the Government failed to obtain a warrant prior to searching computer hard drives and electronic media it seized from his home and that he was "coerced" into granting the FBI permission to search.   In making this assertion, Defendant does not acknowledge that he in fact signed a document giving the agents the right to search the premises and to take any items that they determined might be related to their investigation (ECF No. 1001, Exh. D). To the extent he asserts that agents needed a warrant to search property he had given them permission to seize, such is nonsensical.   Finally, his conclusory and unsupported assertion that he was coerced into signing the documents, waiving his rights, and allowing agents to search does not entitle him to relief.

### 4.   Infirmity of the Superseding Indictment

Defendant raises challenges to the sufficiency of the superseding indictment in Grounds 8, 14, and 54.   First, he claims in Ground 8 that the language of the indictment parroted the statutory language without providing enough specific information about the underlying offense conduct or the co-Defendants involved in each charge for him to prepare a meaningful defense (ECF No. 973 at 7–10). Defendant's request for a bill of particulars was denied by the district court (ECF Nos. 321, 377).   Defendant's disagreement with the district court's decision and his desire to relitigate this issue herein does not entitle him to relief.

Case Nos: 3:08cr22/LAC/EMT; 3:13cv304/LAC/EMT

In Ground 14, Defendant asserts that he was prejudiced by the indictment of multiple Defendants on substantive counts for offense conduct not occurring within the Northern District of Florida due to the highly disturbing child pornography images involved in some of the counts.   As noted *supra*, venue is proper in any district where an offense was begun, continued, or completed and in any district from, through, or into which the unlawful commerce moves.   18 U.S.C. § 3237(a). Therefore, venue was proper in this district because the Defendants posted advertisements that reached this district and posted child pornography that was received in this district.   Furthermore, under a co-conspirator theory of liability, the Defendants who resided outside the Northern District of Florida aided and abetted Defendant Freeman's receipt of child pornography in this district and are criminally liable for the receipt of same under Pinkerton v. United States, 328 U.S. 640 (1946). *See also* United States v. Long, 866 F.2d 402, 406–07 (11th Cir. 1989); United States v. Stitzer, 785 F.2d 1506, 1519 n.7 (11th Cir. 1986).   Pinkerton liability extends to "all acts and foreseeable consequences of the conspiracy."   United States v. Silvestri, 409 F.3d 1311, 1335 (11th Cir. 2005).   Although he did not specifically make this argument, Defendant was not entitled to be tried alone merely because of the introduction of prejudicial evidence in a joint trial, or because he believed he had

a better chance of acquittal in a separate trial.   *See* <u>United States v. Lopez</u>, 649 F.3d 1222, 1234 (11th Cir. 2011); <u>Zafiro v. United States</u>, 506 U.S. 534, 538–40 (1993).

Defendant's assertion in Ground 54 that he is entitled to relief because the district court failed to establish that it had jurisdiction over the proceedings is spurious.   Title 18 U.S.C. § 3231 provides that the district courts of the United States have original jurisdiction of all offenses against the laws of the United States.

    5.   <u>Improper use of Government Witness</u>

Defendant contends in Ground 11 that the Government improperly used a confidential informant to obtain the defense trial strategy.   He asserts that in mid-2008, co-Defendant John Mosman and his counsel "covertly arranged a plea deal" whereby Mosman would remain incarcerated in the same county jail dormitory as the other Defendants and participate in meetings and discussions regarding trial strategies.   He further contends Mosman was able to access the laptop computer the co-Defendants had been provided to jointly review discovery, and that at one point he deleted large amounts of discovery in an attempt to disrupt the defense efforts. Defendant claims that Mosman took notes, passing them on to his lawyer and the prosecutor.   As seeming "proof" of the covert arrangement, Defendant cites the fact that Mosman did not enter his formal plea until the final deadline for doing so, and thereafter was transferred to another facility.   As further "proof," Defendant notes

that a trial that the Government had claimed would take four weeks was completed in five days.

Defendant's bald assertions do not prove his claim.  Furthermore, the Government notes in its response, as this court is well aware, the Office of the United States Attorney for this district does not engage in plea bargaining.  The Government explained at a pre-trial conference that it expected the trial to be shorter than anticipated in part because there were fewer Defendants proceeding to trial, but also because it had culled through the evidence (*see* ECF No. 763 at 16; *see also* ECF No. 720 at 10).   Defendant's arguments are based on mere speculation without any supporting evidence.

In Ground 12, Defendant asserts that the Government interfered with defense witness and co-Defendant Michael Berger, who pleaded guilty in this case.  He claims that Berger was a victim of unauthorized access to his computer, or "hacking," and not actually a member of the alleged conspiracy.  The other Defendants purportedly sought to have Berger testify as a defense witness about the hacking and his online activities.  According to Defendant, the Government approached counsel for Berger and at least one other unidentified defendant and warned that if Berger testified, evidence would be turned over to Berger's home state and the Government would "see to it that he was indicted on an unrelated allegation

Case Nos: 3:08cr22/LAC/EMT; 3:13cv304/LAC/EMT

of video voyeurism" from ten years prior (ECF No. 972 at 12–13).    The Government allowed Berger to plead guilty to a single "unrelated" count of receipt of child pornography.

Defendant's assertions are, again, factually unsupported.   The Government appended to its response a letter from Mr. Berger's attorney regarding his conversations with co-Defendant Mumpower about the conspiracy, and his desire to cooperate with the Government in order to receive a Rule 35 motion (ECF No. 1001, Exh. F).   The record reflects that on October 2, 2008, Berger, as part of the instant conspiracy, pleaded guilty to Count 26 of the Superseding Indictment, not an "unrelated" charge (*see* ECF Nos. 187; 288–289; 855-2).   The transcript of Berger's rearraignment also reflects that pursuant to Berger's plea, the Government agreed that it would not prosecute him in the District of Maryland for a crime committed in that district (ECF No. 855-2 at 83–84).   Berger was sentenced on December 16, 2008, before trial began in Defendant's case (ECF Nos. 386, 387).   Thus, there was nothing preventing the defense from calling him to testify at trial, had it chosen to do so.   Berger's motivation to earn a Rule 35 motion, rather than impropriety on the part of the Government, might have prevented him from being a defense witness.

   6.  Speedy Trial Violation

Case Nos: 3:08cr22/LAC/EMT; 3:13cv304/LAC/EMT

Defendant claims in Ground 13 that he was denied a speedy trial because 300 days elapsed between his March 3, 2008, first appearance before a magistrate judge, and his trial, which commenced on January 5, 2009.   He complains that counsel waived speedy trial on June 10, 2008, after the 70-day statutory limitation had already expired (ECF No. 253), and that trial was delayed a further 199 days with no waiver and no benefit to the defense.

The record reflects that on May 5, 2008, the Government filed, with the acquiescence of all Defendants, a Joint Motion to Continue Trial Date (ECF No. 201).   This was the first of several continuances.   Between Defendant's arraignment and the superseding indictment, the Government notes that there were multiple motions that tolled the speedy trial clock, which Defendant concedes. (ECF No. 1001, at 19 n.9; ECF No. 1048 at 20–21).   The defense never moved for dismissal of the indictment as a result of an alleged speedy trial violation, and no objection was preserved.   His assertion that counsel should not have agreed to the delay as Defendant "gained nothing from the delay, including time to prepare," does not entitle him to relief.

### 7.  Infirmity of Jury Venire and Selection Process

Defendant raises three related claims regarding the alleged infirmity of the jury venire and the selection process.   He claims in Ground 15 that the jury venire

Case Nos: 3:08cr22/LAC/EMT; 3:13cv304/LAC/EMT

was inadequate due to its size, noting that only 49 individuals appeared.   In Ground 16, Defendant claims that the defense was "forced to use peremptory strikes in order to excuse jurors who should have been dismissed for cause."   He claims that the court was reluctant to, or refused to, dismiss jurors for cause due to the small size of the jury pool.   And in Ground 57, Defendant claims that the district court abused its discretion when it empaneled an inadequate number of jurors in the venire and consequently refused to dismiss jurors for cause.

Due process requires that "the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment."   Morgan v. Illinois, 504 U.S. 719, 727 (1992).   The seating of any juror who should have been dismissed for cause requires reversal.   Skilling v. United States, 561 U.S. 358, 395–96 (2010) (citing United States v. Martinez-Salazar, 528 U.S. 304, 316 (2000)).   Defendant identifies four jurors that he believes should have been stricken for cause:   Juror #2, whose wife was an elementary school principal; Juror #23, a kindergarten teacher who expressed a bias against the Defendants; Juror #25, who stated that she had been molested as a child by a stranger; and Juror #33, who stated that the daughters of her only two friends had been sexually abused and that she had worked in the State Attorney's Office assisting in the prosecution of sexual abuse cases (ECF No. 972 at 14).

Defendant's assertions about the court's "refusal" to strike jurors for cause are not supported by the record.    Contrary to his assertion, a defense attorney may move to strike a juror for cause, and in fact attorney Clinton Couch made such a challenge (ECF No. 758 at 68–70).    The court merely advised counsel that it would count the challenge for cause as one of the 14 challenges allotted to the defense (ECF No. 758 at 70).    Thus, Defendants as a group received more challenges than the number allotted under Rule 24(b)(2) of the Federal Rules of Criminal Procedure, and there was no operative difference between a challenge for cause and a peremptory challenge.    Despite Defendant's complaint, the record reflects that each of the jurors described above was stricken by the defense (ECF No. 758 at 71–75).    Furthermore, the undersigned notes that the Defendants as a group did not exhaust their 14 challenges (ECF No. 758 at 75–76).    Defendant has not shown that the jury ultimately empaneled was biased or that the outcome of the proceedings would have been different with a larger venire, and he is not entitled to relief on this ground.

In Ground 58, Defendant contends that the district court abused its discretion when, in charging the jury with its duties at the beginning of trial, it asserted a belief in the "Good Book."    Defendant claims that this suggested that the jury should follow "the dubious morals of that tome rather than the proper laws of Congress" (ECF No. 972 at 34).    The reference in question actually occurred during jury

selection, while the court was explaining the standard of proof required in a criminal case, proof beyond a reasonable doubt.   The court stated "To use an example, our scientists continue to tell us that for over five billion years the sun has been coming up every day, and that suggests to me that it is probably reasonable to expect that the sun will rise tomorrow.   On the other hand, those of us who believe in the Good Book know that it says one day that sun will not rise, and that also could be tomorrow." (ECF No. 758 at 38).   The court went on to explain that a possible doubt about the sun not coming up the next day was not a reasonable doubt, and then asked the jurors whether they would require proof beyond any doubt before they were willing to return a verdict of guilty.   This single isolated reference to the "Good Book" cannot reasonably be construed as the court telling the jury "to use Christian morals from the Bible to determine guilt" as Defendant claims (ECF No. 1048 at 22).   It did not in any way contaminate the venire or render the resulting jury constitutionally infirm.

### 8. Improper Testimony/Evidence Used at Trial

Defendant raises multiple claims regarding the testimony and evidence adduced at trial.   He claims, primarily, that evidence was improperly introduced at trial, and he makes arguments about the credibility of the testimony presented (*see*

ECF No. 973 at 43–47).   Such arguments are not proper in light of the procedural posture of this case.

Defendant contends in Ground 17 that the Government solicited impermissible hearsay from an FBI agent.   Defendant notes that Constable Power was the undercover agent who downloaded, decrypted, read, and saved all postings from the alleged conspiracy, and that Power testified generally at trial about how messages are decrypted, and how everything he downloaded and decrypted was saved on two removable hard drives which were admitted at trial over objection. (ECF No. 720 at 56, Trial Exhibits 1A and 1B).   Defendant complains that because it was FBI Special Agent Charles Wilder who testified as to the authenticity of the various decrypted messages and materials, Defendant was unable to cross-examine Power regarding the actual downloading and decrypting of the messages or otherwise challenge their authenticity (ECF No. 721 at 134–39).[3]   Furthermore, Defendant complains that he was not provided with the original encrypted message to do his own "translation" (ECF No. 973 at 57–58).

In response to the Government's statement that Constable Power was available through the entire trial and could have been called as a defense witness,

---

[3] The page references to transcripts cited herein are to the court's electronic docket rather than the numbers as they appear on the hard copy of the transcript.

Case Nos: 3:08cr22/LAC/EMT; 3:13cv304/LAC/EMT

Defendant notes that it is not incumbent upon the defense to assist the Government in presenting its case, especially in "authenticating allegedly inculpatory evidence." Defendant cannot have it both ways and complain he was unable to do something (cross-examine Constable Power) that he claims he should not be required to do. Furthermore, he has not shown how cross-examination about these matters would have altered the outcome of the proceedings.

In Ground 18, Defendant maintains that the introduction of subpoena returns as business records violated the Fifth and Sixth Amendments.   Defendant refers to subpoenas to Giganews, Inc., a news service provider used by him and others.   He asserts that the subpoenas required that Giganews provide account information and logs for various message holders, and that production of the requested information required decryption of a coded string placed into the header by the server.   As a result of the manner in which the records were introduced, Defendant contends that he was unable to cross-examine the individual who decrypted the records and establish the authenticity of the information obtained after decryption.   The court granted the Government's motion in limine before trial and determined that these records would be admissible (ECF Nos. 393, 440).   Furthermore, a challenge to the admissibility of these records was rejected as meritless and not warranting

discussion on appeal.   <u>McGarity</u>, 669 F.3d at 1229 n.6.   Defendant has not shown a constitutional violation.

Defendant contends in Ground 19 that the introduction of the prosecutor's work-product as "evidence" in the case was prejudicial to him.   Specifically he complains that charts listing nicknames and groups in the conspiracy and summarizing evidence should not have been admitted.   The Government argues that summary charts are admissible pursuant to Federal Rule of Evidence 1006, although Defendant correctly notes that this rule provides for the use of summaries to "prove the content of voluminous writings, recordings or photographs that cannot be conveniently examined in court."   Still, the court does not find that Defendant has shown that the admission of the summary exhibits was in violation of his constitutional rights or somehow altered the outcome of the proceedings against him. *See, e.g.,* <u>United States v. Francis</u>, 131 F.3d 1452, 1457–59 (11th Cir. 1997) (discussing approved use of summaries of evidence)

In Ground 20, Defendant complains that when Government witness Special Agent Charles Wilder testified about items seized from Defendant's home and place of employment, Wilder improperly testified as to a legal conclusion, that is, that many of the items seized were "child pornography," as contrasted with "child modeling" images (s*ee* ECF No. 721 at 210–11).   The Government notes that the

jury was instructed on the definition of child pornography (ECF No. 469). Therefore, the jury was able to draw its own conclusion about the exhibits it viewed. Perhaps more significantly, the undersigned finds that the brief references complained of did not render the proceedings constitutionally infirm in light of the overwhelming evidence against Defendant, including actual video and photographic evidence.

Defendant next asserts, in Ground 21, that the Government solicited testimony about facts that witnesses could not have possibly known to be true and therefore "induced" perjury.   If a witness testified in error about some aspect of the operation of the conspiracy, this error cannot, without more, be attributed to nefarious intent on the part of the Government, and does not entitle Defendant to relief under § 2255 (*see* ECF No. 972 at 17, citing alleged testimonial errors at ECF No. 720 at 57, 64, 78, 86, 89, 92, 119).

In Ground 22, Defendant complains that the Government solicited irrelevant and prejudicial testimony.   Specifically, in testifying about Defendant's bank records, Special Agent Wilder commented on a payment made to an individual named Sergio Marzola (ECF No. 721 at 105).   Wilder testified, over objection from Defendant's counsel, Mr. Keith, that he had learned from speaking to witnesses and law enforcement officers, as well as from reviewing records, that Mr. Marzola was

a child pornography and child modeling producer who had been arrested in Italy (*id*. at 106).   Defendant's suggestion that this testimony was irrelevant because it was unrelated to any other evidence is mistaken.   Special Agent Wilder testified that he was present on February 29, 2008, when law enforcement executed a search warrant at Defendant's residence.   Wilder testified that when Defendant was asked why he thought law enforcement was there, Defendant's response was: "Sergio Marzola" (ECF No. 721 at 157).   Defendant told Wilder at that time that Marzola sold child pornography and that Defendant had purchased it from him, typically using Western Union for the financial transactions (*id*.).   Defendant's suggestion that the former testimony was irrelevant is therefore not well-founded, and the introduction of same provides no basis for relief.

In Ground 23, Defendant asserts that the presentation of what he characterizes as "inflammatory personal evidence" against two co-Defendants violated his constitutional rights.   He identifies two pieces of evidence.   The first was a CD containing child pornography that included what purported to be a personal note from the minor victim, depicted in the images and videos on the CD addressed to co-defendant Castleman's daughter, indicating that it was okay for her to "play together" like the victim and her father (ECF No. 721 at 286).   The second item is a typewritten confession by co-Defendant McGarity in which he admits that he

molested his daughter in 1999 (ECF No. 723 at 232–33).   Similarly, in Ground 24 Defendant asserts that the presentation of inflammatory evidence against his six co-Defendants violated his rights.

It is certainly true that in a multi-defendant trial, evidence may be introduced against one defendant that is not probative of the guilt of another defendant. The Government is not barred by this fact from introducing the evidence at all.   With respect to the specific items Defendant challenges, the appellate court found a challenge to the admission of the CD to be meritless and not warranting discussion; it also ruled that the confession was properly admitted.   McGarity, 669 F.3d at 1229 n.6, 1243–45.

Furthermore, it is a well-settled principle that it is preferable for persons who are charged together to also be tried together, particularly in conspiracy cases. United States v. Green, 818 F.3d 1258, 1282 (11th Cir. 2016) (quoting United States v. Smith, 918 F.2d 1551, 1559 (11th Cir. 1990)); United States v. Browne, 505 F.3d 1229, 1268 (11th Cir. 2007) (citing Zafiro v. United States, 506 U.S. 534, 537–38 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together")); United States v. Hill, 643 F.3d 807 (11th Cir. 2011). Cautionary instructions to the jury to consider the evidence separately, such as the one given in this case, are presumed to guard against prejudice.   United States v.

Francis, 131 F.3d 1452, 1459 (11th Cir. 1997) (quoting United States v. Gonzalez, 940 F.2d 1413, 1428 (11th Cir. 1991)); Zafiro, 506 U.S. at 539; United States v. Garcia, 405 F.3d 1260, 1273 (11th Cir. 2005).   Severance is highly disfavored. Even in a case when two co-conspirators committed murder, the Eleventh Circuit has found that severance is not warranted.   *See* United States v. Lopez, 649 F.3d 1222, 1233-36 (11th Cir. 2011).   Thus, while Defendant argues strenuously that his trial should have been severed from that of his co-Defendants (ECF No. 973 at 47–57), he has not shown any constitutional basis for relief.

In Ground 25, Defendant asserts that the Government's use of a large screen to broadcast the images and videos to the court and the jury violated his rights.   He asserts that the images and videos were highly inflammatory and prejudicial, and maintains that the Defendants had stipulated that they contained child pornography.

The Government correctly notes that the screen used at trial was the district court's evidence presentation system, and that there was no other screen in the courtroom that would have allowed the jury to see the evidence.   Although Defendant claims that the Government had the option to use still photos, presentation of the video evidence obviously required a different form of presentation.   Binding Eleventh Circuit precedent holds that the introduction into evidence of images containing child pornography is proper, notwithstanding a defendant's stipulation to

that fact.   United States v. Alfaro-Moncada, 607 F.3d 720, 734 (11th Cir. 2010).   A criminal defendant "may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it."   Old Chief v. United States, 519 U.S. 172, 186–87 (1997).   There was no constitutional error in the admission of the video and still evidence, and the Government presented only a fraction of the available images.   Furthermore, as to Ground 27, which concerns a complaint regarding the presentation of prejudicial evidence regarding "known victims," this evidence was necessary because many Defendants did not want to stipulate that the images and videos were of "real" children (ECF No. 763 at 5; ECF No. 724 at 35).

In Ground 26 Defendant claims that the Government improperly solicited testimony regarding his post-arrest silence (ECF No. 721 at 226).   The identical issue was addressed on appeal, and the Eleventh Circuit found no error.   McGarity, 669 F.3d at 1240–42.   This issue may not be relitigated herein.

Defendant contends in Ground 56 that the district court should have pre-screened the videos/images that were presented to weigh their "possible effect" on the jury.   There is no legal authority suggesting that this is required, and this is no basis for relief.

Case Nos: 3:08cr22/LAC/EMT; 3:13cv304/LAC/EMT

In Grounds 59, 60, and 61, Defendant complains that the district court abused its discretion in allowing the testimony discussed in Grounds 17, 20, 21, and 22; the subpoena evidence discussed in Ground 18, and the attorney work-product summaries discussed in Ground 19.   To the extent a claim for abuse of discretion is cognizable on collateral review, each of these assertions is without merit.

9.   Variance and Sufficiency of the Evidence at Trial

In Grounds 28 and 29, Defendant asserts that the evidence presented by the Government to support his conviction on Count 6, in which he was charged with advertising the exchange of child pornography, was a material variance from the indictment and also insufficient to sustain his conviction.   He also claims in Ground 33 that this conviction, as well as his conviction on Count 18, transporting child pornography, was based on protected speech.   As to the latter claim, child pornography is not entitled to First Amendment protection.   *See* New York v. Ferber, 458 U.S. 747 (1982); Ashcroft v. The Free Speech Coalition, 535 U.S. 234 (2002).   As to the former claims, Defendant's suggestion that the Government was limited in its presentation of evidence at trial to only the evidence it presented to the grand jury is not well-founded.   Furthermore, his assertion that this was not a continuing offense is contradicted by the indictment itself, which reveals that the offense charged in Count 6 was alleged to have occurred "between on or about

August 31, 2006, through the date of the return of this superseding indictment"
(March 18, 2008) (ECF No. 78 at 13).

Defendant also challenges the sufficiency of the evidence to support his
convictions on Counts 1, 18, and 29 (Grounds 30–32).   As recognized by the
Eleventh Circuit on appeal, the overwhelming evidence at trial supported his guilt
of these specific charges.   Thus, even if cognizable, no relief is warranted on these
claims.

In Grounds 34 through 37, Defendant raises various challenges to his
convictions on Counts 2 and 40.   These convictions were reversed on appeal and as
such these claims warrant no further discussion.   Defendant's assertion, in Ground
63, that the district court abused its discretion in denying his motion for judgment of
acquittal is not cognizable and does not entitle him to relief.

### 10.  Improper Closing Argument

Defendant argues in Grounds 38 and 62 that the prosecutor's closing argument
and rebuttal were improper and violated his constitutional rights and that the district
court should have granted a mistrial.

The propriety of remarks made during the prosecutor's closing argument was
addressed on appeal, although Defendant Freeman did not join in with Defendants
McGarity, Lakey, Lambert, White, and Mumpower in contending that a mistrial was

warranted.   <u>McGarity</u>, 669 F.3d at 1245.   Notably, the Eleventh Circuit agreed that some comments made by the prosecutor during his closing were improper, but found the comments did not prejudice the substantial rights of the Defendants in light of the overwhelming evidence against them.   *Id.* at 1245–47.   Defendant has not established that he was so dissimilarly situated that his substantial rights were violated by the same comments, or that there was a different argument applicable to the comments, applicable only to his case, that would have engendered a different result.

11.  <u>Jury Instructions</u>

In Grounds 39 through 44 Defendant argues that the jury instructions were unclear or improper, and in Ground 64 he asserts that the district court abused its discretion when it "mis-instructed" the jury.

Grounds 39 and 40 are directed to the allegedly confusing instruction with respect to Count 1 which failed to include a unanimity instruction.   A unanimity instruction was required to ensure that the jury convicted each Defendant based on the same three predicate offenses.   On appeal, Defendant challenged the lack of unanimity instruction, and the Government conceded that same was required.   The appellate court found, however, that the failure to include the instruction was harmless error.   The Eleventh Circuit noted that each of the Defendants, with the

exception of Defendant White, was convicted of three predicate CCE offenses, to wit, advertising child pornography and transporting child pornography, as well as conspiracy, and that conspiracy remained a valid predicate offense notwithstanding the fact that it had been vacated as a lesser included offense.    McGarity, 669 F.3d 1250–51 n.45.    Because this issue was resolved on appeal, no further discussion is warranted.

Defendant argues in Ground 41 that the failure to provide a unanimity instruction on the substantive counts, as requested by his attorney, violated his constitutional rights.    In response, the Government notes merely that the court utilized pattern instructions (ECF No. 469).    Defendant argues that because the Government presented evidence of multiple advertisements, transports, and receipts of child pornography, a unanimity instruction was required to ensure that the jurors unanimously agreed on which act or acts formed the basis for each conviction. Defendant's suggestion that, had such an instruction been given, the outcome of the proceedings would have been different, is purely speculative.    He has not shown that his substantial rights were affected, and he is not entitled to relief.    *See* United States v. Weiss, 539 F. App'x 952, 956–57 (11th Cir. 2013).

Ground 42 is a claim that counsel's failure to request an instruction regarding venue violated Defendant's rights.    However, as noted by his attorney, Defendant

Freeman was in the Northern District of Florida, so there was no basis to raise a venue argument (ECF No. 724 at 72–73). Counsel is not ineffective for his failure to raise a meritless issue.

In Ground 43, Defendant asserts that the court's failure to instruct on his theory of defense, that is, that the material allegedly advertised and transported was not pornography, was prejudicial. While it may have been true that some of the material transported was not pornography, abundant evidence concerning the transportation of child pornography was presented at trial. A defendant has the right to have the jury instructed on a theory of defense only if "there has been some evidence adduced at trial relevant to that defense." United States v. LaFond, 783 F.3d 1216, 1224 (11th Cir. 2015) (quoting United States v. Ruiz, 59 F.3d 1151, 1154 (11th Cir.1995)). If the evidence does not support a requested instruction, the district court does not err in failing to give it. LaFond, 783 F.3d at 1224. The proposed instruction was not legally supported, and thus there was no error.

Defendant alleges in Ground 44 that the jury was improperly instructed on aiding and abetting. This issue was thoroughly discussed during the jury charge conference, with defense counsel taking the position that the Government's decision to charge the Defendants in separate counts of the indictment meant that they waived the ability to pursue aiding and abetting liability because a lone Defendant could not

aid and abet himself (ECF No. 724 at 69–73).   After the court indicated its intent to give the standard aiding and abetting instruction, Defendant's lawyer objected to the instruction except as to Count 40 (ECF No. 724 at 126–27, 134).   The Government noted that the aiding and abetting instruction could be read in any case.   The court found it to be proper and included the instruction (ECF No. 724 at 135).   An issue such as this that was fully developed could have been raised on appeal.   In any event, Defendant has not shown that inclusion of this instruction violated his constitutional rights.

    12. <u>Sentencing Issues</u>

     Defendant raises several issues related to sentencing which he attempts to couch in constitutional terms in an attempt to obtain relief.   Defendant contends that neither the facts in the PSR nor the Sentencing Guidelines enhancements were supported by the evidence at trial (Grounds 45–47) and that the counts of conviction were improperly grouped in the PSR, resulting in a higher offense level (Ground 48).   Counsel made various objections to the PSR, which were largely overruled, but regardless of this, the district court noted that its sentence would be the same without considering its rulings on those objections (ECF No. 835 at 48).

     Defendant also complains that the court's use of his prior state conviction involving a minor was improperly used to expand the statutory maximum because

the indictment made no mention of the prior offense (Ground 49).   Both a prior conviction and a similar incident were set forth in the PSR (ECF No. 1194, PSR ¶¶ 128, 135) and used as the basis for an enhancement (ECF No. 835 at 8–12).   The Eleventh Circuit found use of this conviction to be proper.   McGarity, 669 F.3d at 1261–63.   Defendant may not relitigate this issue herein.

Defendant also contends in Ground 50 that he was penalized for exercising his right to a jury trial, noting that Defendants who entered guilty pleas to the same conduct received prison terms at or below their calculated guidelines ranges. Defendant's attorney made this argument at sentencing, noting that seven Defendants who pleaded guilty got less than life while the five who went to trial got more than life (ECF No. 835 at 40).   The Government explained that this was attributable to the different guidelines calculations and resulting ranges (*id*. at 42). Defendant's suggestion in his reply that there is something improper about the fact that his guidelines range would have been different if he had chosen to plead guilty is misguided.   Defendants who plead guilty typically receive not only a three-level downward adjustment to reward them for accepting responsibility for their criminal conduct, but also the opportunity to cooperate with the Government in hopes of receiving an even greater reduction in their sentence.   Thus, the fact that the

individuals who pleaded guilty received lower sentences is not only constitutionally permissible, it is unsurprising.

Defendant's contentions that the sentence imposed for Count 2 was illegal (Ground 51) and that the restitution award was improper (Ground 53) are moot.   As noted earlier, both the conviction on Count 2 and the restitution award were vacated on appeal.   His assertion, in Ground 52, that his sentences on Counts 1, 6, and 18 were the result of a double jeopardy violation is without merit.   Count 1 charged the Defendants with engaging in a continuing criminal enterprise.   Defendant's convictions on Count 6 and Count 18 (in addition to the vacated Count 2) served as the necessary three predicate offenses for Count 1.   Participation in a continuing criminal enterprise or conspiracy does not eliminate an individual's liability for any substantive offense conduct.

Finally, Defendant contends in Ground 65 that the district court abused its discretion in imposing upon him the maximum sentence.   The appellate court reviewed the propriety of all of the Defendants' sentences and found them to be neither grossly disproportionate nor in excess of constitutional limitations. McGarity, 669 F.3d at 1256.   There was no sentencing error that warrants relief.

13.   Transgressions of the Eleventh Circuit Court of Appeals

In Grounds 66 through 71, Defendant challenges various actions of the Eleventh Circuit Court of Appeals.   Specifically, he alleges that the appellate court abused its discretion by allowing Senior District Judge Roger Vinson, a colleague of the trial judge, Lacey Collier, to sit on the panel in this appeal.   Defendant presumes bias by Judge Vinson due to the fact that Judges Vinson and Collier have been "friends and colleagues for nearly thirty years."   Defendant further claims that the appellate court abused its discretion when it refused to allow him to proceed pro se, when it failed to follow its own and Supreme Court precedent, when it failed to establish that it had jurisdiction over the appeal, when it declined to consider the impact of issues it identified as meritless on other Defendants, and finally in holding that it was bound by prior precedent.   Assertions of error by the appellate court are not cognizable in this proceeding.   What is more, Defendant filed a petition for writ of certiorari, the proper method for challenging the Eleventh Circuit's decision, but the United States Supreme Court denied the petition.   Freeman v. United States, 133 S. Ct. 374 (2012).

### 14.   Ineffective Assistance of Counsel

Defendant contends in Grounds 72 through 75 that his trial attorney, Assistant Federal Public Defender Thomas Keith, was constitutionally ineffective in every stage of the proceedings.   First he asserts that Mr. Keith provided ineffective

assistance during the pre-trial stage of the proceedings. Defendant refers to the allegations raised in Grounds 1 through 16 of the instant motion, and also claims that counsel failed to meet the requirements of <u>Strickland</u> when he did not view the videos to be used as evidence in their entirety before trial.   Defendant contends that counsel's performance during trial was constitutionally ineffective for the reasons stated in Grounds 17 through 44 and 54 through 64, which are discussed *supra*. Finally he assails counsel's performance during sentencing as articulated in Grounds 45 through 53 and 65.

In Ground 75, Defendant contends that counsel improperly advised him regarding the possibility of reaching a plea agreement with the Government.   He claims that he was not advised about the possibility of a sentence reduction under USSC § 5K1.1 in exchange for his testimony, and that when he proposed entering a plea to some of the charged counts and agreeing to testify, "counsel refused to present the offer to the Government."

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.   <u>Massaro v. United States</u>, 538 U.S. 500, 503 (2003); *see also* <u>United States v. Franklin</u>, 694 F.3d, 1, 8 (11th Cir. 2012).   In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant

must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013). Strickland's two-part test also applies to guilty pleas.   Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)).   A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice.   Pericles v. United States, 567 F. App'x 776, 782 (11th Cir. 2014) (quoting Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991)); Rosin v. United States, 786 F.3d 873 (11th Cir. 2015).   A defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances."   Padilla v. Kentucky, 559 U.S. 356, 372 (2010).   The Sixth Amendment right to the effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected."   In re Perez, 682 F.3d 930, 932 (11th Cir.2012) (citing Missouri v. Frye, ––– U.S. ––––, 132 S. Ct. 1399 (2012); Lafler v. Cooper, –––U.S. ––––, 132 S. Ct. 1376 (2012)).   A defendant who claims that ineffective advice led him to reject a plea offer must show that but for ineffective assistance of counsel, he would have accepted the plea, and

that the conviction or sentence or both under the terms of the plea offer would have been less severe than under the judgment and sentence that were imposed.    Lafler, 132 S. Ct. at 1385.    A defendant's insistence that he is innocent is a "relevant consideration" that "makes it more difficult to accept his claim" that he would have agreed to a plea deal.    *See* Osley v. United States, 751 F.3d 1214, 1224–25 (11th Cir. 2014).    In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."    Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).    Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."    Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009)

(quoting <u>Strickland</u>, 466 U.S. at 689); *see also* <u>Chandler v. United States</u>, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.   <u>Strickland</u>, 466 U.S. at 689.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."   <u>Gordon v. United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); <u>Chandler</u>, 218 F.3d at 1315.   When reviewing the performance of an experienced trial counsel, such as Defendant's attorney in this case, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." <u>Chandler</u>, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, a defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.   <u>Strickland</u>, 466 U.S. at 694.   "The likelihood of a different result must be substantial, not just conceivable."   <u>Harrington v. Richter</u>, 562 U.S. 86, 112 (2011) (quoting <u>Strickland</u>).   For the court to focus merely on "outcome

determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."   Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010).   A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).   Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."   *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.   Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.   *See* Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States,

456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

The law is well-established that counsel is not ineffective for failing to preserve or argue a meritless claim.  Denson v. United States, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008)).   This applies regardless of whether the issue is a trial or sentencing issue.  *See, e.g.*, Sneed v. Florida Dep't of Corrections, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless Batson claim not ineffective assistance of counsel); Lattimore v. United States, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for

change of venue); <u>Jackson v. Herring</u>, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."   <u>Chandler</u>, 218 F.3d at 1313.   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.   <u>Dingle</u>, 480 F.3d at 1099; <u>Williamson v. Moore</u>, 221 F.3d 1177, 1180 (11th Cir. 2000).   "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"   <u>Dingle</u>, 480 F.3d at 1099 (quoting <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)).   The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."   <u>United States v. Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992).

Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.   A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

In light of the court's substantive review of Defendant's claims and the record, the undersigned concludes that Defendant has not shown that his well-seasoned defense attorney was constitutionally ineffective.   Counsel defended his client aptly despite the strength of the Government's case and the evidence with which he was confronted.   The fact that counsel did not affirmatively present a defense is in many circumstances the most reasonable defense strategy, and not a constitutional failing. Through his closing argument, counsel provided an outline of the evidence produced at trial and attempted to distance his client from the more egregious acts involved in the conspiracy (ECF No. 760 at 18–36).   Mr. Keith reminded the jury to make a "practical decision based on reason and common sense without emotion," and to discount anything the Government said that was not supported by the evidence, before conceding that Defendant might be guilty of the possession charge.   A

lawyer who makes a concession that his client may be guilty of some, but not all of the charges, makes a strong appeal to the jury's sense of reason.   In this case, the strategy may not ultimately have been successful, but it certainly was not unreasonable.

Defendant's suggestion that counsel was constitutionally ineffective because he failed to secure a plea bargain is similarly without merit.   Because pleas of nolo contendere are not accepted in this court, to enter a plea Defendant would have had to admit his guilt and plead guilty to the charges against him.   Notwithstanding the situation of co-Defendant Berger, the office of the United States Attorney for this district typically does not engage in plea bargaining, and as such Defendant would likely have had to enter a guilty plea to all charges.   The undersigned also finds Defendant's belated suggestion that he was willing to enter a plea of guilty bereft of credibility in light of his continued protestations of innocence (*see, e.g.,* ECF No. 973 at 29 ("Freeman sought a jury trial in large part because he believed the video was legal and he continues to maintain that same belief"); *see also, generally* ECF No. 973 at 12–43).   A review of the record as a whole contradicts Defendant's assertion that no reasonable attorney would have conducted his representation as Mr.

Keith did, and Defendant has established neither constitutionally deficient performance nor prejudice.

    15.   <u>Ineffective Assistance of Appellate Counsel</u>

Defendant raises three grounds for relief that are directly related to the performance of appellate counsel (Grounds 76–78).  He contends generally that appellate counsel provided constitutionally deficient assistance in preparing the direct appeal, and that counsel failed to seek rehearing of the Eleventh Circuit's decision or present the proper claim of error to the United States Supreme Court.

Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal.   <u>Evitts v. Lucey</u>, 469 U.S. 387, 396 (1985). However, the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so.   <u>Smith v. Robbins</u>, 528 U.S. 259, 287–88 (2000); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 126–27 (2009); <u>Jones v. Barnes</u>, 463 U.S. 745, 751–52 (1983); <u>Heath v. Jones</u>, 941 F.2d 1126, 1130–31 (11th Cir. 1991).   It is possible to bring a <u>Strickland</u> claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective.   <u>Smith</u>, 528 U.S. at 288 (citing <u>Gray v. Greer</u>, 800 F.2d

644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")); *see also* <u>Payne v. United States</u>, 566 F.3d 1276, 1277 (11th Cir. 2009) (citing <u>Smith</u>, 528 U.S. at 288). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." <u>Barnes</u>, 463 U.S. at 751–52. In fact, this is the "hallmark of effective appellate advocacy." <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986). The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that the counsel's performance, which must be judged in its entirety, was effective. *Id.*; <u>Heath</u>, 941 F.2d at 1131 (counsel's appellate advocacy must be judged in its entirety); <u>Reutter v. Sec'y for Dept. of Corr.</u>, 232 F. App'x 914, 917 (11th Cir. 2007) (citing <u>Heath</u>, 941 F.2d at 1131). Of course, appellate counsel is not ineffective for failing to raise claims that are reasonably considered to be without merit. <u>Brown v. United States</u>, 720 F.3d 1316, 1335 (11th Cir. 2013); <u>Shere v. Sec'y Fla. Dep't of Corr.</u>, 537 F.3d 1304, 1311 (11th Cir. 2008); <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir. 1984).

Defendant's appellate attorney raised seven individual counts of error and adopted some of the arguments made by co-Defendants in their briefs.   A review of the thorough appellate opinion in this case, which resulted in two counts of conviction and the restitution order being vacated, does not suggest ineffective appellate advocacy in this case.   The Eleventh Circuit found the other four arguments Defendant raised to be significant enough to warrant discussion, although they were ultimately decided adversely to him.   *See* McGarity, 669 F.3d at 1233–35, 1247–51, 1258, 1261–64.   Furthermore, as evidenced by the discussion in the foregoing sections, Defendant did not have any other issues of arguable merit, much less any "sure fire winners."   His suggestion that appellate counsel should have raised close to 60 additional issues on appeal in the limited space allotted is simply unreasonable.   Defendant has not shown that appellate counsel's performance, taken as a whole, was constitutionally ineffective, given the confessions and the "overwhelming" evidence presented at trial.   McGarity, 669 F.3d at 1231, 1242–43, 1246.

In both the petition for rehearing en banc filed in the Eleventh Circuit and in the petition for a writ of certiorari filed in the United States Supreme Court, appellate counsel argued that the McGarity panel had incorrectly held that the district court's

error in failing to give a unanimity instruction regarding Count 1 was harmless error. Such a claim, if successful, was the strongest remaining issue in the case, and one that, if successful, would have significantly reduced Defendant's sentence as this was the count on which Defendant received a life sentence. The fact that the argument was ultimately unsuccessful does not direct a finding that counsel's performance was constitutionally deficient. Defendant has not established that he is entitled to relief.

<u>Conclusion</u>

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Nor has he shown that an evidentiary hearing is warranted. Therefore Defendant's motion should be denied in its entirety.

**Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C.

Case Nos.: 3:08cr22/LAC/EMT; 3:13cv304/LAC/EMT

§ 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.    Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.    § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).    Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.     Defendant's Motion to Vacate, Set Aside or Correct Sentence (ECF No. 972) be **DENIED**.

.     2.     A certificate of appealability be denied.

Case Nos.: 3:08cr22/LAC/EMT; 3:13cv304/LAC/EMT

At Pensacola, Florida, this <u>29th</u> day of August 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

Case Nos.: 3:08cr22/LAC/EMT; 3:13cv304/LAC/EMT